UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DEBORAH KAYE BANKS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 17-05535-JDE<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Deborah Kaye Banks ("Plaintiff") filed a Complaint on July 26, 2017, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed consents to proceed before the undersigned Magistrate Judge. In accordance with the Court's Order Re: Procedures in Social Security Appeal, the parties filed a Joint Stipulation ("Jt. Stip.") on March 22, 2018, addressing their respective positions. The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

*/ / /*

*/ / /*

# I.
# BACKGROUND

On November 22, 2013, Plaintiff applied for DIB, alleging disability beginning July 11, 2012. (Administrative Record ["AR"] 16, 169-71.) After her application was denied initially (AR 108), Plaintiff requested an administrative hearing, which was held on December 7, 2015. (AR 49, 117-18.) Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"), as did June C. Hagen, a vocational expert, and Dr. Thomas J. Maxwell, a medical expert. (AR 49-60.)

On January 15, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. (AR 13-24.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 11, 2012, the alleged onset date. (AR 18.) The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease; pancreatitis; diabetes mellitus; hypertension; osteoarthritis of the right shoulder and knees; obesity; and gastroesophageal reflux disease. (AR 19.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 20.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> no climbing ladders, ropes, or scaffolds; no exposure to unprotected heights or hazardous machinery; no more than occasional postural maneuvers; no more than occasional pushing or pulling with the lower extremities; and no more than occasional overhead activities with the upper extremities.

(AR 21.) The ALJ further found that Plaintiff was capable of performing past relevant work as a gambling cashier as generally performed. (AR 24.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as

defined in the Social Security Act. (Id.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 9-12.) On June 2, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-6.) This action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

3

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

Issue No. 1: Whether the ALJ properly considered the examining physician's opinion; and

Issue No. 2: Whether the ALJ properly considered Plaintiff's subjective symptoms.

**A.  Opinion of Dr. Ernest Bagner III**

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). A treating physician's opinions are entitled to greater weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Id. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id. For instance, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported

by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Where the treating physician's opinion is contradicted by another physician's opinion, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.

Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. Bayliss, 427 F.3d at 1216. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. Widmark v. Barnhart, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006) (citing Lester, 81 F.3d at 831); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999).

Plaintiff was seen by Dr. Ernest Bagner III, M.D. ("Dr. Bagner") for a complete psychiatric evaluation on April 15, 2014. (AR 471-75.) Plaintiff reported a history of anxiety, depression, crying spells, low energy, low motivation, and feeling helpless and hopeless. (AR 471.) Dr. Bagner noted that there were no medical records available for review and Plaintiff denied any prior inpatient or outpatient psychiatric treatment. (AR 472.) On mental status examination, Dr. Bagner described Plaintiff as tearful and cooperative with good eye contact and soft speech in tone and volume. (AR 473.) Dr. Bagner described Plaintiff's mood as depressed, affect appropriate, and noted that Plaintiff denied any suicidal or homicidal ideation. (Id.) Plaintiff did not exhibit looseness of association, thought disorganization, flight of ideas, and thought blocking, tangentiality and circumstantiality. (Id.) Dr. Bagner noted that Plaintiff had no delusions and denied any thought broadcasting, thought

insertion, phobias, obsessions, derealizations, and depersonalization. She denied any auditory, visual, olfactory, or tactile hallucinations. Dr. Bagner described Plaintiff as alert and oriented to time, place, person, and purpose. She was able to recall three out of three objects immediately, but only one out of three objects in five minutes. (Id.) Dr. Bagner did not note anything unusual about Plaintiff's concentration and calculation, fund of information and intelligence, and insight and judgment. (AR 474.) Dr. Bagner diagnosed Plaintiff with major depressive disorder with anxiety and assessed her Global Assessment of Functioning ("GAF") score as 65.[1] Dr. Bagner found that Plaintiff had no limitations in the ability to follow simple, oral and written instructions; mild limitations in the ability to follow detailed instruction, interact appropriately with the public, co-workers, and supervisors, comply with job rules such as safety and attendance, respond to changes in a routine work setting; *moderate limitations in the ability to respond to work pressure in a usual work setting due to emotional decompensation*; and her daily activities were mildly limited. (Id.) Dr. Bagner opined that, from a psychiatric point of view, her prognosis was fair due to anxiety and depression. (AR 475.)

The ALJ found that Plaintiff's medically determinable mental impairment of major depressive disorder did not cause more than a minimal limitation in her ability to perform basic mental work activities and therefore, was non-severe. (AR 19.) The ALJ found that Plaintiff had no more than mild limitations in the first three broad functional areas used to determine severity – activities of daily living, social functioning, and concentration, persistence, or pace – and no episodes of decompensation that have been of extended duration

---

[1] A GAF score of 61-70 indicates some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social, occupational, or school functioning, but that the individual is generally functioning pretty well. See Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV-TR").

6

in the fourth area. (Id.)

    In reaching her decision, the ALJ relied "heavily" on Dr. Bagner's consultative psychiatric examination and gave it "great weight." (AR 19.) The ALJ considered that, although not a treating physician, he was both medically trained and familiar with the disability program. He also had the opportunity to observe and examine Plaintiff in the clinical context, his opinion was well-supported by the medical findings, his assessment did not conflict with any of the other medical evidence in the record, and was consistent with the State Agency medical consultant's opinion that Plaintiff had no severe mental impairment. (Id.) The ALJ summarized Dr. Bagner's findings, but erroneously noted that Dr. Bagner indicated in the functional assessment "that [Plaintiff] would have no more than mild limitations in all mental work domains." (Id.)

    Plaintiff contends that the ALJ's misstatement of Dr. Bagner's findings with respect her functional abilities constitutes reversible error because the ALJ essentially rejected this opinion without explanation. (Jt. Stip. at 7-9.) Plaintiff argues that the ability to respond to work pressure in a usual work setting is necessary for the performance of work activity and conflicts with the ALJ's RFC assessment. (Id. at 7.) She maintains that this error was not harmless because the ALJ found that she could perform her past relevant work as a gambling cashier, which is a semi-skilled, SVP 4 work and the moderate limitation in the ability to respond to work pressure in a usual work setting would impact the ability to perform this semi-skilled work. (Id. at 8.)

    The Commissioner argues that the ALJ did not reject Dr. Bagner's opinion that Plaintiff was moderately limited in one aspect of mental functioning, but instead, relied on the expert translation by Dr. Elizabeth Covey, Psy.D. ("Dr. Covey") of that finding into information relevant for assessing the severity of Plaintiff's mental impairment at step two, a finding that Plaintiff does not challenge. (Jt. Stip. at 11-13.) Further, even assuming

7

that the ALJ erred in assessing Dr. Bagner's opinion, such error was harmless because Dr. Covey's opinion still supports the RFC and the ALJ was not required to incorporate limitations identified at step two into the RFC. (Id. at 14-17.)

The Court agrees with the Commissioner. Dr. Bagner did not assess the four broad functional areas for purposes of the step two inquiry. State agency medical consultant Dr. Covey did. Dr. Covey explicitly considered Dr. Bagner's opinions and reasonably converted his opinions into concrete functional limitations for purposes of the disability evaluation. Dr. Covey reviewed the evidence pertaining to Plaintiff's mental impairments. (AR 101-02.) She summarized Dr. Bagner's opinion as endorsing "overall mild limitations" and considered those findings consistent with the limited psychiatric data. (AR 102.) Dr. Covey considered the four broad functional areas and determined that Plaintiff had mild limitations in the first three areas, and no episodes of decompensation of extended duration in the fourth. (Id.) Dr. Covey concluded that because Plaintiff's mental impairment did not cause more than "mild ongoing limitations," her mental impairment was non-severe. (Id.) Dr. Covey's assessment that Plaintiff has no severe impairment is consistent with Dr. Bagner's findings, as well as Plaintiff's lack of treatment for a mental impairment. (AR 102.)

Plaintiff argues that the presence of a moderate limitation in the ability to respond to work pressure in a usual work setting would impact the ability to perform work as a gambling cashier. (Jt. Stip. at 8.) In support of this contention, Plaintiff cites to Hutton v. Astrue, 491 F. App'x 850, 851 (9th Cir. 2012) and district court decisions citing to this unpublished Ninth Circuit decision. (Id. at 8-9.) In Hutton, the Ninth Circuit concluded that the ALJ erred in failing to consider that the claimant's non-severe post-traumatic stress disorder ("PTSD") caused some "mild" limitations in the areas of

concentration, persistence, or pace. Hutton, 491 F. App'x at 851. The Ninth Circuit found this omission erroneous because the ALJ failed to consider the plaintiff's limitations at step four once it concluded that his PTSD claims were in "great doubt" based on his lack of credibility. Id. Unlike the ALJ in Hutton, the ALJ in this case did consider the medical evidence related to Plaintiff's mental impairment before reaching her RFC determination. Indeed, Plaintiff does not argue that the ALJ failed to consider the mild limitations in the first three broad functional areas; rather, Plaintiff contends it was error for the ALJ to fail to consider a single aspect of mental functioning in Dr. Bagner's report that was otherwise translated by Dr. Covey and the ALJ.

In reaching an RFC determination, the ALJ must consider the limiting effects of all the claimant's impairments, including those that are not severe. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. However, while the ALJ must consider the limiting effects of all impairments, consideration "does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016). Here, the ALJ did consider Plaintiff's mental limitation in formulating her RFC. (See AR 20 (explaining that the RFC assessment reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis).) After considering the medical record, the ALJ concluded that Plaintiff's mental impairment did "not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." (AR 19.) Further, Plaintiff does not contest the finding that her mental impairment was non-severe, a finding that reflects the impairment, by definition, does not have more than a minimal limitation on her ability to do basic work activities, and which translates in most cases into no functional limitations. See 20 C.F.R. §

9

404.1520a(d); Medlock, 2016 WL 6137399, at *5. Because Plaintiff's mental impairment was not severe and did not cause any significant impairment, the ALJ was not required to include it in Plaintiff's RFC. Medlock, 2016 WL 6137399, at *5; Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); see also Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining that the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation.").

Finally, there was substantial evidence in the record to support the ALJ's assessment of Plaintiff's mental impairment in making the RFC determination. As Dr. Bagner's report reflects, Plaintiff has not sought any inpatient or outpatient psychiatric treatment. (AR 472.) Although Plaintiff had a depressed mood, Dr. Bagner's mental status examination was otherwise mostly normal, with the exception of remembering only one out of three objects in five minutes. (AR 19, 473-74.) Dr. Bagner assessed a GAF score of 65, suggesting that Plaintiff was "generally functioning pretty well." See DSM-IV-TR. As explained, Dr. Covey found that Plaintiff had only mild limitations in three of the four broad functional areas and no episodes of decompensation of extended duration in the fourth functional area. (AR 102.) See also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

On this record, the Court concludes that any error in failing to explicitly reference the moderate limitation in the ALJ's decision was harmless. See Molina, 674 F.3d at 1115.

**B.     Plaintiff's subjective symptom testimony**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 404.1529(a). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).[2]

On February 8, 2014, Plaintiff completed a function report, stating that her medical conditions restrict her ability to function in a normal capacity because of severe pain, agony, and total discomfort. (AR 209-17.) She has trouble lifting, squatting, bending, standing, walking, sitting, kneeling, stair-

---

[2] After the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10.

11

climbing, concentrating, and her conditions have affected her memory. (AR 214.) She indicated that she could lift three pounds, sit for short periods, and has difficulty focusing, following written and spoken instructions, and handling stress. (AR 214-15.)

Plaintiff stated in the function report that she did very little during the day and spent most of the day in bed; she uses a cane, brace/splint, and glasses/contacts; she has difficulty dressing, bathing, and using the toilet; someone helps her with household chores because it is too difficult and painful. She goes outside once or twice a week, can walk half a block, and uses Access Paratransit to get around; she does not have a vehicle; her daughter shops for her; her hobbies include reading, watching television, and crossword puzzles, but she rarely does them because her attention span is shorter and her interest has subsided; she has trouble sleeping and uses medication to help; and she does not spend time with others, but goes to church regularly. (AR 210-12, 213-215.)

During the administrative hearing, Plaintiff testified that in a typical day she sits around, watches a little television, tries to walk outside, and alternates between sitting and standing, but cannot stand very much. (AR 54.) She testified that she helps her husband with bathing and cooking, although she indicated that she does not prepare meals often. (AR 54-55.) She cannot stand for long over the stove, so her daughter helps by providing them with prepared meals. (AR 55.) She sometimes drives to the grocery store, but no place else. (AR 54-55.) She can sit for fifteen to twenty minutes and lies down for thirty minutes to relieve her back pain. (AR 58-59.) She testified that she cannot work because of the "extreme pain" in her back and neck. (AR 55.) Because of pancreatitis, she suffers from abdominal pain on an almost daily basis. (AR 58.) She stated that she must utilize the restroom at least three to five times per hour. (Id.)

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms rising to the level of disability [were] not reliable for the reasons explained in this decision." (AR 21.) In discounting Plaintiff's subjective symptom testimony, the ALJ cited to inconsistent statements by Plaintiff regarding alcohol use and the lack of objective medical evidence. As explained below, the Court finds the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's subjective symptom testimony because the available medical evidence included several inconsistent statements made by Plaintiff, undermining the reliability of her alleged symptoms and limitations. (AR 22.) In particular, the ALJ noted that although Plaintiff testified that she stopped drinking in November 2010, her November 2013 hospital admission indicated that she suffered acute pancreatitis from alcohol abuse, and that she was then currently consuming four to six beers on a daily basis. The ALJ further explained that Plaintiff reportedly stopped drinking at that time, but subsequent progress notes indicated that she admitted she occasionally drank alcohol. The ALJ concluded that although the inconsistent information provided by Plaintiff may not have been the result of a conscious intention to mislead, the inconsistencies suggested that the information provided by Plaintiff generally may not be entirely reliable. (Id.)

Contrary to the ALJ's finding, however, Plaintiff expressly testified that she has not been drinking since November 2013. (AR 55-56.) Further, although the ALJ noted that progress notes after November 2013 indicated that Plaintiff occasionally drank alcohol, the ALJ does not reference a single progress note supporting this contention. Substantial evidence does not support the ALJ's determination that there is an inconsistency regarding Plaintiff's

13

drinking. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (courts may not comb the administrative record to find specific conflicts). Plaintiff consistently reported to her physicians that after November 2013, she stopped drinking. (See, e.g., AR 484 (notating Plaintiff was a non-drinker), 487 (same), 517 (noting that Plaintiff does not drink), 536 (same), 551 (same), 691 (noting that Plaintiff quit drinking in 2013).) The Commissioner cites to the internal medicine evaluation to support the ALJ's finding that Plaintiff admitted to occasionally drinking alcohol after November 2013. (Jt. Stip. at 30.) This report, however, is internally inconsistent and therefore, insufficient to support the ALJ's finding. In one portion of the report, Dr. Marvin Perer, M.D. stated that Plaintiff reported that she stopped drinking in November 2013, while elsewhere he stated that she occasionally drank alcohol. (Compare AR 466 with AR 467.) No explanation is provided regarding this discrepancy.

The only other articulated reason for rejecting Plaintiff's credibility was the lack of objective medical evidence supporting the subjective symptom testimony. Since the ALJ did not provide any other clear and convincing reason for discounting Plaintiff's subjective complaints, however, this finding alone is not a sufficient basis for the ALJ's credibility determination. See Rollins, 261 F.3d at 856-57; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (Lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony.).

The Commissioner argues that the ALJ also rejected Plaintiff's subjective symptom testimony because it was inconsistent with the medical opinion evidence. (Jt. Stip. at 27.) The Commissioner contends that inconsistency with medical opinions and inconsistency with clinical findings and observations are independent bases to find a claimant less than fully credible. (Id.) Even assuming, without deciding, that inconsistencies between the medical opinions and objective medical evidence are distinct, in this

14

instance, the ALJ's finding is not supported by substantial evidence.

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (citation omitted). Here, in discounting the third party function report of Plaintiff's daughter, the ALJ briefly noted that Plaintiff's allegations were not consistent "with the preponderance of the opinions and observations by medical doctors in this case." (AR 24.) However, the ALJ did not identify any specific allegations that were inconsistent with the medical opinions or cite to the opinions she was referencing. See Brown-Hunter, 806 F.3d at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony."); Burrell, 775 F.3d at 1138 ("General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (citation omitted)). The Commissioner refers to Plaintiff's treating physician's statement that Plaintiff was temporarily unemployable, which the ALJ concluded, "strongly suggests that he did not feel her impairments were totally disabling." (AR 23.) A statement by a medical source that a claimant is "disabled" or "unable to work," however, is not considered a "medical opinion," 20 C.F.R. § 404.1527(d)(1), and as the ALJ noted, not entitled to special significance. SSR 96-5p, 1996 WL 374183, at *5. Further, the inference the ALJ made based on the "temporarily unemployable" finding ignores that the treating physician otherwise concluded that Plaintiff was potentially eligible for social security benefits. (AR 413.) As such, to the extent the ALJ relied on this statement in discounting Plaintiff's subjective symptom testimony, such finding is not supported by substantial evidence.

15

Finally, the Commissioner identifies several other reasons for declining to fully credit Plaintiff's statements. However, the ALJ did not identify those reasons in discounting Plaintiff's subjective symptoms. The Court is "constrained to review the reasons the ALJ asserts" and may not affirm the decision of the Commissioner on a ground the ALJ did not invoke in reaching her decision. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (per curiam) (judicial review is limited to reasons stated in the ALJ's decision and the court should not supply possible reasons for rejecting a physician's opinion).

Accordingly, the ALJ did not provide specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony. In this instance, the Court cannot conclude that the ALJ's error was harmless. The ALJ's decision lacks sufficient explanation based on specific evidence in the record for rejecting any specific subjective complaint. See, e.g., Brown-Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [Plaintiff's] testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**C.      Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.

See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes that remand to the Commissioner for further administrative proceedings is warranted. On remand, the ALJ shall reassess Plaintiff's subjective complaints and then reassess Plaintiff's RFC in light of the subjective symptom testimony and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: April 02, 2018

_____
JOHN D. EARLY
United States Magistrate Judge